**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 26-cv-03936-NYW

GERMAN NATAEL LOPEZ GARCIA,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ, in his official capacity,
MARKWAYNE MULLIN, in his official capacity, and
TODD BLANCHE, in his official capacity,

Respondent.

---

## MEMORANDUM OPINION AND ORDER

---

Before the Court is the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"). [Doc. 1]. Respondents filed a Response and a Supplement, [Doc. 9; Doc. 10], and Petitioner filed a Reply, [Doc. 11]. For the following reasons, the Petition is respectfully **GRANTED in part**.

## BACKGROUND

Petitioner German Natael Lopez Garcia ("Petitioner" or "Mr. Lopez") is a native and citizen of Guatemala. [Doc. 1 at ¶ 2]. In 2017, he attempted to enter the United States and was removed pursuant to an order of removal. [*Id.* at ¶¶ 3–5]. He then reentered the United States in December 2021. [*Id.* at ¶ 6]. The Government reinstated his removal order but released him under an Order of Supervision ("OOS"). [*Id.* at ¶¶ 7–8]. The OOS included electronic reporting requirements that Mr. Lopez completed through a mobile app. [*Id.* at ¶¶ 8–9]. Mr. Lopez and his family relocated from Texas to Wyoming in 2022.

[*Id.* at ¶ 11]. In September 2024, he appeared for an appointment at an ICE office in Colorado. [*Id.* at ¶ 13]. There, ICE personnel installed an app, called BI SmartLINK, on Mr. Lopez's personal phone that he used to comply with his reporting requirements. [*Id.* at ¶¶ 13–15].

In December 2025, Mr. Lopez received a message through the reporting system that an error had been detected and he needed to appear at an ICE office in Craig, Colorado. [*Id.* at ¶ 16]. When he contacted ICE to schedule an appointment, ICE personnel told him that no in-person appointment was required and that someone would come to his residence to address the issue. [*Id.* at ¶ 17]. No ICE personnel ever came, despite Mr. Lopez's numerous attempts to arrange a visit. [*Id.* at ¶¶ 18–19]. Nonetheless, Mr. Lopez continued to use the app to comply with his reporting requirements. [*Id.* at ¶ 20]. On August 13, 2026, he submitted a check-in, which the app confirmed was successful. [*Id.* at ¶ 21].

Six days later, Mr. Lopez was arrested and detained by ICE officers. [*Id.* at ¶ 22]. The officers told him he was being detained because he failed to report for required check-ins. [*Id.* at ¶ 23]. Mr. Lopez's wife later attempted to access his BI SmartLINK account but was unable to do so. [*Id.* at ¶ 25]. The app now indicates that his account does not exist, preventing access to his prior reporting history. [*Id.*]. Following his detention, ICE officers met with Mr. Lopez about his removal but did not discuss the basis for revoking his release. [*Id.* at ¶¶ 24, 27]. Mr. Lopez asserts that ICE provided no notice of the reasons for his re-detention—such as any specific OOS violations—nor any informal interview or opportunity to respond. [*Id.* at ¶ 27]. He remains in detention at ICE's Denver Contract Detention Facility. [*Id.* at ¶ 31].

Mr. Lopez brings four claims. First, he argues that the revocation of his release was unlawful because Respondents failed to establish an actual violation of his OOS, as required by 8 C.F.R. § 241.4(l)(1) ("Claim One"). [Doc. 1 at ¶¶ 70–78]. Second, he contends that Respondents further violated § 241.4(l)(1) by failing to follow the revocation procedures required by that regulation ("Claim Two"). [*Id.* at ¶¶ 79–86]. Third, he argues that Respondents have not established that his release was revoked by an authorized official who made the requisite findings under § 241.4(l)(2) ("Claim Three"). [*Id.* at ¶¶ 87–94]. Fourth, he asserts that his revocation without a pre-deprivation notice or opportunity to respond violates his due process rights under the Fifth Amendment ("Claim Four"). [*Id.* at ¶¶ 95–100].

This matter is ripe for disposition. No Party has requested an evidentiary hearing or oral argument, and the Court finds that no hearing is necessary. *Garcia Cortes v. Noem*, No. 25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025) (declining to hold a hearing where the petitioner's habeas challenge was "fundamentally legal in nature").

**LEGAL STANDARDS**

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*

*v. Davis*, 533 U.S. 678, 687–88 (2001)).

**ANALYSIS**

Focusing its analysis on Claim Two, the Court finds that Petitioner should be released, subject to the previous conditions of supervision. The procedures for revoking an order of supervision are governed by 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i). Revocation of release requires that (1) the noncitizen "be notified of the reasons for revocation of his or her release" and (2) the noncitizen be "afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); *see also Olivera-Martinez v. Valdez*, No. 26-cv-01120-NYW, 2026 WL 1361538, at 3 n.2 (D. Colo. May 15, 2026) (noting that courts routinely interpret this regulation as requiring notice and informal interview upon revocation of release regardless of reason for revocation). Additionally, § 241.4(l)(2) requires that the decision to revoke release must be made either by the Executive Associate Commissioner or, under certain circumstances, a district director. 8 C.F.R. § 241.4(l)(2).

This Court, along with other courts across the country, have held that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy is release. *See Olivera-Martinez,* 2026 WL 1361538, at *3; *see also Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025) (ordering release of noncitizen when ICE failed to follow its own regulations in revoking supervised release) (collecting cases); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152–53 (D. Mass. 2025) ("ICE, like any agency, has the duty to follow its own federal regulations. . . . As here, where an

immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal state and ICE fails to adhere to it, the challenged action is invalid." (cleaned up) (citing *Zadvydas*, 533 U.S. at 690)); *Guerra v. Bondi*, No. 25-cv-01240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026) ("Habeas corpus relief is warranted" where "Respondents' failure to comply with § 241.4(l)(3) resulted in redetention, accompanied by a lack of notice or a meaningful opportunity to respond."); *Funes v. Francis*, 810 F. Supp. 3d 472, 502 (S.D.N.Y. 2025) (finding that the court must order the petitioner's release in "align[ment] with numerous cases releasing habeas petitioners held in custody following procedural due process violations" (collecting cases)); *Grigorian v. Bondi*, No. 25-cv-22914-RAR, 2025 WL 2604573, at *9–10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide Petitioner with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels Petitioner's release. Courts around the country have concluded likewise." (collecting cases)).

Petitioner argues that the revocation of his supervised release did not comply with the above regulations. He alleges that Respondents provided no meaningful notice of the reasons for his re-detention, nor any timely informal interview to respond to the revocation of his release. *E.g.*, [Doc. 1 at ¶ 84]. Respondents make no attempt to dispute these allegations or argue in any way that the applicable regulations were obeyed before Petitioner's supervised release was revoked. *See* [Doc. 9]. Accordingly, Respondent's detention of Petitioner violates due process, and release is the appropriate remedy. *See Olivera-Martinez,* 2026 WL 1361538, at *3.

Respondents do suggest that, if the Court orders release, it should be "on conditions to be set by the Department of Homeland Security." [Doc. 9 at 2]. Petitioner counters that he should be released under the terms of his prior OOS. [Doc. 11]. The Court respectfully agrees with Petitioner. "[T]he vast majority of courts have found that where respondents fail to provide notice of revocation and conduct an interview . . . , the '[p]etitioner's immediate release is required to return him to the status quo ante—the last uncontested status which preceded the pending controversy.'" *Virachak v. Baltazar*, No. 26-cv-00391-STV, 2026 WL 746285, at *4 (D. Colo. Mar. 17, 2026) (quoting *Nguyen v. Archambeault*, No. 25-cv-04107-PHX-SHD (ASB), 2025 WL 3250922, at *1 (D. Ariz. Nov. 21, 2025)). That status quo ante includes Petitioner's release under the conditions of his prior OOS. *See id.* at *5; *Gonzalez Llinas v. Scott*, No. C26-1461-SKV, 2026 WL 1429338, at *3 (W.D. Wash. May 1, 2026). While this Order does not preclude Respondents from revoking Petitioner's OOS in the future, they must do so in compliance with due process and the applicable regulations.

Accordingly, the Court respectfully **GRANTS** the Petition **in part** and **ORDERS** Respondent to immediately release Mr. Gonzalez Garcia, subject to the terms of his previous OOS, **within 48 hours of the entry of this Order**. Because the Court grants the requested relief as to Claim Two, the Court does not address the remaining claims.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **GRANTED** as to Claim Two;

(2) Respondent is **DIRECTED** to immediately release Petitioner, subject to the

terms of his previous Order of Supervision, **within 48 hours of the entry of this Order**; and

(3) The Parties shall submit a Joint Status Report within **three business days of this Order** confirming Petitioner's release from custody.

DATED: September 11, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge